UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

Audi AG and Volkswagen of
America, Inc.,

                                                          Plaintiffs,


           -v.-                                                    1:07-CV-00173
                                                                        (NPM/DRH)

Shokan Coachworks, Inc. and John H.
Smith,

                                                          Defendants.

_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| FOR THE PLAINTIFFS: | |
| Howard, Phillips & Andersen | Gregory D. Phillips |
| 560 East 200 South, Suite 300 | Scott R. Ryther |
| Salt Lake City, UT 84102 | Thomas R. Lee |
| Hiscock & Barclay, LLP | John D. Cook |
| One Park Place | |
| 300 State Street | |
| Syracuse, NY 13202-2078 | |
| FOR THE DEFENDANTS: | |
| Collen Law Associates, P.C. | Jeffrey A. Lindenbaum |
| The Holyoke-Manhattan Building | Matthew C. Wagner |
| 80 South Highland Avenue | |
| Ossining, NY 10562 | |

Neal P. McCurn, Senior District Judge

*__Memorandum, Decision and Order__*

## *I.  Introduction*

Presently before the court in this trademark infringement action are cross motions for summary judgment by plaintiffs Audi AG ("Audi") and Volkswagen of America, Inc. ("Volkswagen") (collectively "Plaintiffs") and by defendants Shokan Coachworks, Inc. ("Shokan") and John H. Smith ("Smith") (collectively "Defendants").  Oral argument was heard regarding these motions in Syracuse, New York on January 8, 2008.  Decision was reserved.

## *II.  Procedural Background*

Plaintiffs commenced this action over four years ago in the United States District Court for the Eastern District of Michigan.  Plaintiffs' complaint ("the Complaint") sets forth five various causes of action surrounding Defendants' alleged improper use of certain of Plaintiffs' registered trademarks, including the name AUDI® as well as the AUDI RING LOGO® ("the Audi Marks").  Plaintiffs' claims in this action are (1) trademark and trade dress dilution in violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125(c); (2) federal trademark infringement in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114; (3) false designation of origin or sponsorship, false advertising and trade dress infringement in violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125(a); (4) cyberpiracy; and (5) common law trademark infringement.

In February 2007, United States District Judge Victoria Roberts granted the Defendants' motion to transfer the case to this district.  Defendant Smith thereafter filed a motion seeking dismissal of all claims against him pursuant to Fed. R. Civ.

1

P. 8(a) and 12(b)(6).  Said motion was heard by this court and denied from the bench in June 2007.  Shortly thereafter, Plaintiffs filed a motion before Magistrate Judge David R. Homer to amend their complaint to assert an additional claim for rescission of a settlement agreement.  Said settlement agreement resolved a similar action brought by Plaintiffs against Shokan in this court in 1990.[1]

While the motion to amend was pending, Defendants filed a motion to compel Plaintiffs to produce certain documents concerning third-party uses of Plaintiffs' trademarks.  On August 31, 2007, Judge Homer held a telephone conference, at which he, after hearing argument from counsel, denied in part and granted in part Defendants' motion to compel.  On September 4, 2007, Judge Homer reduced his Order to writing, therein directing Plaintiffs to provide Defendants with all co-existence agreements as well as complaints filed in enforcement actions against part suppliers and service stations for the period January 1, 2000 to date.  See Dkt. No. 85.  Defendants timely filed objections to Judge Homer's Order.  Shortly thereafter, the present motions for summary judgment were filed.  At the hearing of oral argument on those motions, the court overruled from the bench Defendants' objections to Judge Homer's September 4, 2007 Order.  Also around that time, Judge Homer denied Plaintiffs' motion to amend the complaint to add a claim for rescission, to which objections were never filed.

Now remaining for resolution are the cross motions for summary judgment.  Plaintiffs seek judgment in their favor, solely regarding liability, as to all of their

---

[1] John H. Smith was not a defendant to the 1990 action.  See Audi Aktiengesellschaft, et al. v. Shokan Coachworks, 90-cv-01172 (N.D.N.Y.).

claims pursuant to Fed. R. Civ. P. 56, as well as a permanent injunction against Defendants.  See Dkt. No. 95.  Defendants seek judgment dismissing all of Plaintiffs' claims as well as judgment in their favor on their breach of contract counter-claim, also pursuant to Fed. R. Civ. P. 56.  See Dkt. No. 96.

### *III.  Factual Background*

Plaintiff Audi is a German corporation that sells its vehicles, parts, services and other products throughout the world.  See Decl. of Linda Scipione, Oct. 31, 2007, ¶ 8, Dkt. No. 95-37.  Plaintiff Volkswagen is an American corporation, which is the exclusive licensee for the sale of Audi vehicles, parts, services and products in the United States.  See id., ¶ 2.  Defendant Shokan is a New York Corporation whose only facility is located in West Shokan, New York.  See Decl. of John H. Smith, Oct. 31, 2007,  ¶ 8, Dkt. No. 97-1.  Defendant Smith is the President and sole owner of defendant Shokan.  See id. ¶ 1.; Dep. of John H. Smith, Sept. 25, 2007, 25:17-22, at Ex. Y to Decl. Of John D. Cook, Oct. 31, 2007, Dkt. No. 95.  Shokan is an Audi vehicle recycling facility, which has been in operation for over twenty five years, and only sells parts for Audi vehicles.  See id. ¶¶ 3 and 4.

Audi obtained a trademark registration for the word, Audi ("AUDI®") from the United States Patent and Trademark Office ("USPTO") on December 13, 1960. See Scipione Decl. ¶ 4; Ex. A to Cook Decl.  Audi also obtained a trademark registration for its Audi Ring Logo, which consists of four horizontal, intertwined rings ("AUDI RING LOGO®") on January 26, 1971.  See id., ¶ 5; Ex. B to Cook Decl.

In 1990, Plaintiffs commenced a trademark infringement action in this court

against defendant Shokan, wherein Plaintiffs alleged Shokan infringed Audi's FOOTBALL LOGO trademark ("FOOTBALL LOGO®") as well as its AUDI® mark on letterhead, business cards and advertisements.  See Ex. M to Cook Decl.; Ex. 8 to Smith Decl.  The lawsuit was resolved by execution of a settlement agreement ("the Settlement Agreement" or "the Agreement") in July 1991.  The Agreement states, in relevant part, that

> Shokan is currently using a logo comprised of the word "Shokan" enclosed in a rust-colored oval with an outside ring which are nearly identical in shape and color to the Audi Football [Logo] (the "Shokan Logo").  In the Shokan Logo, the word "Shokan" is written in a nearly identical typeface and color as the word "Audi" in the Audi Football [Logo].  In addition, the word "Audi" appears in close proximity to the Shokan Logo on Shokan's letterhead, business cards and advertisements.

Ex. O to Cook Decl; Ex. 2 to Smith Decl.  In order to settle the lawsuit, Shokan agreed to stop using the Shokan Logo and agreed that "Shokan, its employees, successors and assigns will not infringe Audi AG's tradenames, trademarks or service marks, including the word 'Audi', Audi Football or Audi Four-Ring design[.]" Id. at ¶¶ 1, 3.  Paragraphs four and five of the Agreement state in whole as follows:

> Shokan agrees not to use the word "Audi", except that the word "Audi" may be used by Shokan as an adjective to describe the availability of parts or repair services for Audi vehicles, provided that the language preceding and following such word be in characters equal and identical in size, type, color, illumination, mounting, spacing, decoration, material and format; and that such use not be as part of a trade or corporate name; and that the phrase "Audi Service", "Audi Repair", "Audi Sales", "Audi Specialist", and "Audi Parts" shall not be used unless it is clear from the context, or by an express disclaimer, that Shokan is not affiliated with Audi AG or

4

[Volkswagen].

Audi AG and [Volkswagen] agree that Shokan's new logo, in which "Shokan" appears in a green shape with rectangular sides and an arced top and bottom, and the advertisement attached as Exhibit A, meet the requirements of paragraphs 3 and 4, and shall not be challenged as infringing upon Audi AG's trademarks or trade dress.

Id., ¶¶ 4, 5.

Exhibit A to the Agreement is an advertisement, which includes the new logo, and includes language in capital letters such as "AUDI USED PARTS",  and "800-ALL-AUDI".  See id.

On November 15, 1991, the Honorable Howard G. Munson dismissed the 1990 lawsuit "without prejudice."  Audi Aktiengesellschaft, et al. v. Shokan Coachworks, 90-cv-01172 (N.D.N.Y.), Dkt. No. 6.  Specifically, Judge Munson ordered that "[t]he court retains complete jurisdiction to vacate this Order and to reopen the action upon cause shown that settlement has not been completed and further litigation is necessary." Id.

Over a decade later, on May 13, 2003, Plaintiffs notified Defendants of certain of their alleged infringing uses of Plaintiffs' trademarks and demanded that Defendants cease and desist from those uses, which include registering the 800allaudi.com domain name and displaying Plaintiffs' trademarks on the website to which the domain name refers.  See Ex. V to Cook Decl.  On October 20, 2003, Plaintiffs again wrote to Defendants, noting the removal of the AUDI RING LOGO® from Shokan's website, as well as the use of a new domain name for the website (i.e., shokan.com), but demanding that Defendants transfer registration of the 800allaudi.com domain to Plaintiffs and further complaining that Defendants' use of the 800-ALL-AUDI vanity telephone number infringes the AUDI® mark.

5

See Ex. Z to Cook Decl.  The commencement of the present action followed on February 14, 2004.  On May 7, 2004, Plaintiffs wrote to Defendants rejecting their offer of settlement because although Defendants agreed to comply with the terms of Plaintiffs' October 20, 2003 letter, they did not agree to cease use of the 800-ALL-AUDI vanity telephone number.  See Ex. AA to Cook Decl.  By that same letter, Plaintiffs contend Defendants continue to violate the terms of the Settlement Agreement, a contention which did not appear in either of the previous cited correspondence.  See id.; Exs. V and Z to Cook Decl.

At issue in the present action are several alleged incidents of misappropriation of Plaintiffs' AUDI® and AUDI RING LOGO® trademarks by Defendants.  First, Plaintiffs object to Defendants' use of the vanity telephone number, 1-800-ALL-AUDI, as well as the domain name, www.800allaudi.com as inappropriate uses of the AUDI® mark.  Other alleged misappropriations of this mark include the use of "Used Audi Parts" or "Audi Used Parts" in advertisements, answering of Shokan's business telephone, "all Audi," use of "Shokan Audi Parts" as a signature block on 38,000 of Shokan's electronic messages ("email"), and the use of allaudi.shokan@verizon.net as an email address to conduct Shokan business.  Plaintiffs further allege that Defendants misappropriate the AUDI® mark with the placement of signs on Shokan's business premises that read, "Audi Parts Warehouse," and "1-800-ALL-AUDI." Finally, Plaintiffs allege Defendants misappropriate the AUDI RING LOGO® with its use on the Shokan website as well as its appearance as a sign on Shokan's business premises.

***Vanity Telephone Number***

6

Shokan has been using and advertising its 800-ALL-AUDI vanity telephone number for over twenty years.  According to defendant Smith, over ninety seven percent of Shokan's sales are made by telephone.  <u>See</u> Smith Decl. ¶ 39.

On May 24, 1989, counsel for plaintiff Volkswagen wrote to defendant Smith complaining that a Shokan advertisement, which appeared in the April 3, 1989 issue of Autoweek magazine, infringes Audi trademarks in several ways as follows: use of the word, "AUDI" in block lettering; use of a logo which includes the name "Shokan" inside an oval and utilizes the Audi oval and lettering; and use of the word, "Quattro".  <u>See</u> Ex. 5 to Smith Decl.  The Shokan advertisement, which appeared in the April 3, 1989 issue of Autoweek magazine, included the aforementioned alleged infringing uses, but also included the vanity telephone number, "800-ALL-AUDI."  <u>See</u> id., Ex. 9.  The same advertisement appeared in the July, August and September 1990 issues of Car and Driver magazine.  <u>See</u> id., Ex. 17.  According to Volkswagen trademark paralegal, Linda Scipione, Audi acknowledges that it was aware of the April 3, 1989 Autoweek advertisement as well as the 1990 Car and Driver advertisements at the time that they appeared, "but believed that Shokan ceased its use of these advertisements as a result of the 1991 Settlement Agreement."  Decl. of Linda Scipione, Nov. 19, 2007, ¶¶ 4, 6. Dkt. No. 105-2.  Scipione further declares that Audi was unaware of Shokan's use of the vanity telephone number after execution of the Settlement Agreement.  <u>See</u> id., ¶ 7.  Scipione also testified that Defendants were not asked to stop using the vanity telephone number in 1990 because "[v]anity telephone numbers weren't a big deal back then."  Scipione Dep., 98:16-99:23, Ex. 7 to Smith Decl., Dkt. No. 97.

Other advertisements including the "1-800-ALL-AUDI" vanity telephone number appeared in the Spring and Fall 1997 issues of Quattro Quarterly.  See Ex. 18 to Smith Decl.  Scipione declares that no one in Audi's legal department was aware of these advertisements, a contention which is further supported by her deposition testimony as well as that of Audi's in-house trademark attorney, Debra Kingsbury.  See Nov. 17, 2007 Scipione Decl. ¶ 5; Dep. of Linda Scipione, Sept. 18, 2007, 76:7-11, 77:17-19, Ex. KK to Decl. of John Cook, Nov. 20, 2007, Dkt. No. 105-9; Dep. of Debra Kingsbury, Sept. 18, 2007, 177:17-23, Ex. JJ to Cook Decl.  According to Scipione, Quattro Quarterly is not an official publication of Plaintiffs but instead is the national publication of the Audi Club of North America, a legally separate entity from Plaintiffs.  See Nov. 17, 2007 Scipione Decl. ¶ 5.  At her deposition, however, Scipione testified that she understood the Audi Club of North America to be "associated with Audi AG" and when asked if she was aware that Audi sponsors the Audi Club of North America, Scipione replied "[t]hat would make sense because I knew there was some sort of connection[.]"  See Scipione Dep., 76:18-25; 77:13-15.  By her deposition, Scipione explains that while Audi is *a* sponsor of the Audi Club of North America, it is not the *sole* sponsor, and that several other companies, including Bridgestone Tires, Maplewood Imports, and Anderson Motorsport, sponsor the organization. See Nov. 17, 2007 Scipione Decl. ¶ 5.  Defendants clarify that while Audi is not the sole sponsor of the Audi Club of North America, it is the sole Gold sponsor, followed by several Silver, Bronze, and Contributing sponsors.  See Smith Decl. ¶ 91, Ex. 26, Dkt. No. 98.

As evidence of Defendants' knowledge that use of their vanity telephone

number constitutes trademark infringement, Plaintiffs point to a letter dated February 21, 1994 wherein Smith notified Plaintiffs' counsel that a competitor of Shokan was using the business name, "VW Parts Inc." and inquired regarding whether such use was permissible.  See Ex. Q to Cook Decl.  Smith requested that he be contacted and provided his telephone number as "800-255-2834".  See id. In a follow-up letter dated May 18, 1994, Smith again asked for feedback regarding his competitor's business name, and indicated that he would like his business name  to be "AUDI PARTS INC."  See Ex. R to Cook Decl. Accompanying the follow-up letter is a business card for Smith's competitor, which includes the vanity telephone number, "1-800-VW-PARTS."  See id. Shortly thereafter, counsel for Plaintiffs notified Smith that the use of "VW" in the name of his competitor is an infringement of Volkswagen's trademark, and accordingly, Smith would not be allowed to change Shokan's name to "Audi Parts Inc."  See Ex. S to Cook Decl.  Counsel further notified Smith that the use of the "advertised telephone number of 1-800-VW-PARTS[]" also constitutes trademark infringement.  See id.

### *Domain Name Registration*

The domain name, 800allaudi.com was registered on February 1, 2001.  See Ex. X to Cook Decl.  The "registrant" of the domain name is listed as "Shokan Coachworks," followed by "John Smith" and the Shokan business address.  See id. According to Smith, he did not, nor did he instruct anyone else to, register the domain name, 800allaudi.com.  See Decl. of John H. Smith, Oct. 31, 2007, ¶¶ 43, 45, Dkt. No. 97-1.  Although Smith declares that the domain name was registered to Shokan, and not to him personally, see id. ¶ 44, a copy of the registration

reflects that both Smith and Shokan are listed as registrant, see Ex. X to Cook Decl.; Ex. 35 to Smith Decl. Both Smith and Shokan are also listed as the administrative contact on the registration. See Ex. 35 to Smith Decl.

It is undisputed that Shokan has discontinued use of the 800allaudi.com domain name, and that as of the time of the filing of the pending motions, an Internet browser seeking to locate the website to which it refers will receive an error message. See Defs.' Statement of Material Facts ¶¶ 40, 42, Dkt. No. 96-3; Pls.' Resp. to Defs.' Statement of Material Facts ¶¶ 40, 42.

### *Trademarks on Website*

Plaintiffs submit a copy of an image taken from Defendants' website, on which the AUDI RING LOGO® appears. See Ex. W to Cook decl. Smith declares that he is unaware of the AUDI RING LOGO® ("the Logo") appearing on Shokan's website for more than twenty-four hours. See Smith Decl. ¶ 26. According to Smith, neither he nor any of Shokan's employees knew of the existence of the Logo on the website until they received notification of same from Plaintiffs, as it was Shokan's website designer, an independent contractor, who placed the logo on the website. See id. ¶¶ 30-31. Smith's son, Aaron, testified that he was unaware of the existence of the Logo on the website until 2003 when Audi brought it to Defendants' attention. See Dep. of Aaron Smith, Sept. 25, 2007, 25:1-26:14; 27:7-13, at Ex. 11 to Smith Decl., Dkt. No. 97. It is undisputed that Defendants received notice that the Logo appeared on their website in May 2003. See Pls.' Statement of Material Facts ¶ 22, Dkt. No. 95-38; Defs.' Resp. to Pls.' Statement of Material Facts ¶ 22, Dkt. No. 107-2. Smith contends that the Logo was removed from the website within twenty-four hours of Shokan receiving

notice of its existence, and that it has not appeared on the website since May 2003. See id. ¶ 28-29.

According to the deposition testimony of Pat Guariglia, Shokan's website designer, while it is true that either he or his partner put the AUDI RING LOGO® on the website, the content that "went live on the website had final approval . . . [b]y . . . either John Smith or Aaron Smith."  See Dep. of Pat Guariglia, Sept. 24, 2007, 36:25-37:3, 31:24-32:11, Ex. PP to Cook Decl.  Guariglia also testified that the website went live sometime in 2001 and that the Logo appeared on the site at that time.  See id., 27:15-30:4, 70:5-10.

Plaintiffs have submitted images which are purported to represent the appearance of Shokan's website at various times in the past.  See Exs. NN, OO, QQ, RR and TT to Decl. of Jacob Adams, Nov. 20, 2007, Dkt. No. 105-3.  A trademark paralegal for Plaintiffs' counsel declares that in order to produce the images of Shokan's website, he utilized another website, www.archive.org, referred to as the "Internet Archive," which provides "a collection of chronological records of various websites." Id. ¶¶ 4-5, 9.  Images, which Adams declares represent the appearance of the 800allaudi.com website on September 25, 2001 and February 6, 2003, both include the AUDI RING LOGO®.  See Exs. NN and OO to Adams Decl.

Smith contends that the Shokan website contains the following language: "Shokan Coachworks is not affiliated with Audi AG.  AUDI® is a registered trademark of Audi AG.  You may visit Audi AG's worldwide website at www.audi.com."  See Smith Decl. ¶ 51.  In support of this contention, Defendants submit a copy of their website home page dated July 9, 2007, which does reflect

11

the cited disclaimer.  Other images obtained from the Internet Archive, www.archive.org, which purportedly represent the appearance of Shokan's website on January 26, 2004 and June 15, 2004, were submitted by Plaintiffs.  <u>See</u> Exs. TT and QQ to Adams Decl., Dkt. No. 105-3.  Those images reflect that the disclaimer appeared on the homepage of Shokan's website, www.shokan.com, on June 13, 2004, but was absent from the website's homepage on February 10, 2004. <u>See</u> id.

### *Answering Telephone, "All Audi"*

According to Jared Cherry, a paralegal who is employed by Plaintiffs' counsel, "[o]n multiple occasions" when he called Shokan "between May 13, 2003 and March 2004, . . . the persons answering the telephone . . . answered the phone by saying 'all Audi'."  Decl. of Jared Cherry, Oct. 30, 2007, ¶¶ 1-3, Dkt. No. 95-36.  When asked if he ever answered the telephone at Shokan, "all Audi," Smith replied, "I may have , but I don't recall doing it routinely, no."  Smith Dep., Sept. 25, 2007, 131:13-16, at Ex. Y to Cook Decl.  Smith went on to state that he never heard any employees at Shokan answer the phone that way.  <u>See</u> id., at 131:17-19. In a subsequent declaration in support of Defendants' summary judgment motion, Smith states that "Shokan does not answer its telephone as "all Audi[,]" and he "cannot remember a single instance where [he] answered the phone" that way or heard an employee answer the phone that way.  <u>See</u> Smith Decl. ¶¶ 52-53.  Smith contends that Shokan employee Nancy Dow is responsible for answering the telephone at Shokan and has been instructed to, and indeed does, answer the phone by saying, "Shokan."  <u>See</u> id. ¶ 54.  Shokan employees Nancy Dow and Aaron Smith both testified that they never answered the phone, "all Audi" nor

have they ever heard anyone else answer the phone that way.  See Dep. of Nancy Dow, Sept. 26, 2007, 44:10-16, at Ex. 35 to Supplemental Decl. of John H. Smith, Nov. 20, 2007, Dkt. No. 107; Dep. of Aaron Smith, Sept. 25, 2007, 39:14-21, at Ex. 36 to Supplemental Smith Decl.  Finally, Pat Guariglia, Shokan's website design consultant, testified that he did not recall specifically how the telephone was answered when he called the Shokan facility, and that "[s]ometimes it was probably just hello."  Dep. of Pat Guariglia, Sept. 24, 2007, 21:3-6; 55:20-25, Ex. PP to Decl. of John D. Cook, Nov. 20, 2007, Dkt. No. 105-9; Ex. 34 to Supplemental Smith Decl.

### *Email Signature Block*

Plaintiffs contend that "[m]ost of the approximately 38,000 emails produced by Defendants use the signature block, 'Shokan Audi Parts.'"  Pls.' Statement of Material Facts. ¶ 30.  In support thereof, Plaintiffs cite to one email message, which does include the referenced signature block.  See Ex. DD to Cook Decl., Dkt. No. 95-32.  Defendants dispute the authenticity of the email message, claiming that "it has been manipulated by Audi's counsel and does not appear in the format that would be viewed by a consumer."  See Defs.' Resp. to Pls. Statement of Material Facts, at ¶ 30.  Defendants specifically contend that none of the emails use the phrase, "Shokan Audi parts" as a signature block.  Id.  However, Defendants submit several email messages in support of their motion for summary judgment, which Smith states are "true and accurate copies of emails sent or received by Shokan."  Smith Decl. ¶ 88, Ex. 23, Dkt. No. 98.  Many of said emails appear in the same format as the single email submitted by Plaintiffs, and include the same signature block, "Shokan Audi Parts."  See id.; Ex. DD to Cook Decl.

***Email Address***

Plaintiffs also contend that Defendants used the personal email address, allaudi.shokan@verizon.net to conduct Shokan business, and submit a copy of one email message in support of same.  See Pls.' Statement of Material Facts. ¶ 30; Ex. EE to Cook Decl.  The single email submitted by Plaintiffs is a message from Smith to "webmaster@800allaudi.com."  See id.  Smith declares that he "never used the email allaudi.shokan@verizon.net to communicate with any Shokan customers."  Supplemental Smith Decl. ¶ 102.

Plaintiffs submit images of Defendants' website homepage as it purportedly appeared on various dates in 2002 and 2003, which were obtained through an archive.com search as previously described.  See Supplemental Decl. of Jared Cherry, Nov. 30, 2007, ¶ 9, Ex. 1, Dkt. No. 109-3.  The images reflect that the email address allaudi.shokan@verizon.net appeared on Defendants' website on July 24, 2002, November 20, 2002, February 6, 2002, March 25, 2003, September 22, 2003, and October 27, 2003.  See id.  Defendants point out that a copy of their website dated May 12, 2003, which appears as Exhibit D to the Complaint, reflects that the email address, sales@800allaudi.com, was used, not allaudi.shokan@verizon.net.  See Ex. 12 to Smith Decl.

***Signs on Shokan's Business Premises***

Plaintiffs submit photographs of certain doors at Shokan's facility, which display what Plaintiffs call "signs" and Defendants refer to as "stickers".  See Exs. BB and CC to Cook Decl; Transcript of Hearing, Jan. 8, 2008, Audi AG v. Shokan Coachworks, Inc., 07-CV-173 (N.D.N.Y) ("Tr."), 38:7-17; 46:21-22.  One photograph, which Plaintiffs claim is of  "Shokan's Office Door," reveals the

AUDI RING LOGO®, and a separate sign or sticker below which includes the phrase, "AUDI PARTS WAREHOUSE" and "1-800-ALL-AUDI." See id. Ex. CC.  The other photograph, which Plaintiffs claim is of the "Entry Door to Shokan's Dismantling Shop" reveals the phrase, "AUDI PARTS WAREHOUSE" and "1-800-ALL-AUDI." See id. Ex. DD.

Shokan employees Nancy Dow and Aaron Smith testified that the door with the AUDI RING LOGO® on it is actually Shokan's lunchroom door.  See Dow Dep., 31:4-22, at Ex. 35 to Supplemental Smith Decl.; A. Smith Dep., 60:7-20, at Ex. 36 to Supplemental Smith Decl.  Defendants submit photographs of what Smith contends is Shokan's lunchroom, which includes the door identified by Plaintiffs as "Shokan's Office Door."  See Smith Decl. ¶ 89, Ex. 24.

Defendant Smith contends that customers may purchase Audi parts from Shokan only over the Internet or by telephone, and not at Shokan's facility, but that under certain circumstances, customers may enter the Shokan facility to pick up a part which has been previously purchased.  See Smith Decl. ¶¶ 15-17. Plaintiffs submit copies of several Shokan emails providing driving directions to Shokan's facility, which Plaintiffs say demonstrates that "a significant number" of customers – at least forty three – visited the Shokan facility during the period June 13, 2005 through September 19, 2007.  See Pls.' Resp. to Defs.' Statement of Material Facts, ¶¶ 22-23; Ex. MM to Cook Decl.  Smith contends, however, that "[f]ar less than 1% of the parts sold by Shokan are picked up by a customer."  Id. ¶ 18.  Moreover, according to Smith, a customer who enters Shokan's facility is not permitted to browse or shop.  See id. ¶ 19.

Smith also declares that no customer has ever been inside the employee

lunchroom, and that customers are not permitted to enter an area of Shokan's facility where the lunchroom door can be seen.  See Smith Decl. ¶¶ 47-48. Defendants note Dow's testimony that she is not aware that anyone other than a Shokan employee has ever been in the lunchroom.  See Dow Dep., 47:17-25, at Ex. 35 to Supplemental Smith Decl.  However, Dow also testified that when someone comes to the Shokan facility for a meeting, the meeting would "possibly" take place in the lunchroom.  See Dow Dep., 30:8-31:3, Ex. SS to Cook Decl.

Smith further contends that "Shokan does not use any signage at its facility that can be viewed by the public."  Smith Decl. ¶ 49.  Dow testified that when a customer comes to Shokan's facility to pick up a part, the customer goes "[i]mmediately inside the shop door."  Dow Dep., 44:17-19, Ex. SS to Cook Decl.

### Use of "Audi Parts Warehouse"

According to defendant Smith, in 1991, Shokan forwarded to Audi for approval a shipping box that Shokan intended to use to deliver Audi parts, which included the phrase, "AUDI PARTS WAREHOUSE."  See Smith Decl. ¶ 65; Ex. 16.  The phrase, "AUDI PARTS WAREHOUSE" also appeared in the July, August and September 1990 Car and Driver advertisements as well as the Fall 1997 Quattro Quarterly advertisement.  See id. Exs. 17, 18.  Scipione notes that by the terms of the Settlement Agreement, Shokan was permitted to use their remaining inventory of boxes for six months, and that subsequent to the six-month period, Audi did not approve Shokan's use of "Audi Parts Warehouse".  See Nov. 30, 2007 Scipione Decl.,¶ 4, Dkt. No. 109-2.  See also Scipione Dep., 88:19-89:25, Ex. WW to Cook Decl., Dkt No. 109-8.  Audi's in-house counsel, Debra Kingsbury, testified that the Settlement Agreement permits Shokan's use of their

boxes after the six-month period, as long as the infringing Shokan Logo is masked by tape or an adhesive label.  <u>See</u> Kingsbury Dep., 94:24-98:11, Ex. XX to Cook Decl. Dkt. No. 109-9.  <u>See also</u> Ex. O to Cook Decl.

The advertisement which appeared in the April 3, 1989 issue of Autoweek included the phrase, "USED PARTS WAREHOUSE" underneath a much larger, bold-faced "AUDI" in block lettering.  <u>See</u> id. Ex. 9.  Plaintiffs thereafter objected in writing to, among other things, the use of "AUDI" in block lettering.  <u>See</u> Ex. 5 to Smith Decl.

## IV.  Discussion

### A.  Summary Judgment Standard

A motion for summary judgment shall be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  <u>See also</u> <u>Beyer v. County of Nassau</u>, 524 F.3d 160, 163 (2d Cir. 2008).  "In ruling on a motion for summary judgment, the district court may rely on any material that would be admissible or usable at trial."  <u>Major League Baseball Props., Inc. v. Salvino, Inc.</u>,  542 F.3d 290, 309 (2d Cir. 2008) (internal quotation and citation omitted).

The movants have the burden to show that no genuine factual dispute exists. <u>See</u> <u>Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co.</u>, 373 F.3d 241, 244 (2d Cir. 2004) (<u>citing</u> <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144, 157, 90 S.Ct. 1598 (1970)).  Moreover, when the court is deciding a motion for summary judgment, it must resolve all ambiguities and draw all reasonable inferences in the non-movant's favor.  <u>See</u> <u>id.</u>  However, "where the movant fails to fulfill its initial

burden of providing admissible evidence of the material facts entitling it to summary judgment, summary judgment must be denied, even if no opposing evidentiary matter is presented, for the non-movant is not required to rebut an insufficient showing." Giannullo v. City of New York, 322 F.3d 139, 140 -141 (2d Cir. 2003) (internal quotation and citation omitted).

When deciding whether a material issue of fact is in dispute, the court is cognizant that a fact is "material" if "it might affect the outcome of the suit under governing law." White v. Haider-Shah, No. 9:05-CV-193, 2008 WL 2788896, at *4 -5 (N.D.N.Y. Jul. 17, 2008) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510 (1986). Also, "[a] material fact is genuinely in dispute 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Id., quoting Anderson, 477 U.S. at 248, 106 S.Ct. at 2510.

### B.  Affirmative Defenses of Acquiescence and, Laches

The court necessarily begins with an analysis of Defendants' laches and acquiescence defenses before reaching the merits of Plaintiffs' claims under the Lanham Act.  See Black Diamond Sportswear, Inc. v. Black Diamond Equip., Ltd., No. 06-3507-cv, 2007 WL 2914452, at *1 (2d Cir. Oct. 5, 2007) (citing Patsy's Brand, Inc. v. I.O.B. Realty, Inc., 317 F.3d 209, 216 (2d Cir.2003)).

By way of affirmative defenses, Defendants argue that Plaintiffs' claims, solely as they relate to Shokan's use of its vanity telephone number and the phrase, "Audi Used Parts", are barred by the doctrines of acquiescence and laches.[2]  The elements of the defense of acquiescence are: "(1) the senior user actively

---

[2] To the extent Defendants purport to assert the affirmative defense of equitable estoppel, the court declines to address same due to the lack of any substantive argument regarding the merits of said defense either in Defendants' papers or at oral argument.

represented that it would not assert a right or a claim; (2) the delay between the active representation and assertion of the right or claim was not excusable; and (3) the delay caused the defendant undue prejudice." ProFitness Physical Therapy Center v. Pro-Fit Orthopedic and Sports Physical Therapy, P.C., 314 F.3d 62, 67 (2d Cir. 2002) (quoting Times Mirror Magazines, Inc. v. Field & Stream Licenses Co., 294 F.3d 383, 395 (2d Cir.2002)).  The elements of laches, succinctly put, are both unreasonable delay and prejudice.  See Cayuga Indian Nation of New York v. Pataki, 413 F.3d 266, 283 (2d Cir. 2005); ProFitness, 314 F.3d at 67.  "Although both acquiescence and laches connote consent by the owner to an infringing use of his mark, acquiescence implies active consent, while laches implies a merely passive consent." ProFitness, 314 F.3d at 67-68.

Defendants argue that all of the elements of their defenses of acquiescence and laches exist here.  First, according to Defendants, Plaintiffs expressly allowed use of the vanity telephone number and the phrase "Audi Used Parts" by the terms of the 1991 Settlement Agreement.  See Ex. 2 to Smith Decl.  Defendants further argue that they have been using the vanity telephone number for over twenty years, and Plaintiffs have been aware of said use for at least eighteen years.  In support of same, Defendants cite a Shokan advertisement which appeared in the April 3, 1989 edition of Autoweek magazine, and which prompted Audi's lawsuit in 1990.  See Exs. 5 & 9 to Smith Decl., Dkt. No. 97.  While the advertisement contained both the vanity telephone number and the phrase, "Used Parts Warehouse", neither usage was identified by Plaintiffs in their list of concerns. See id.  Next, Defendants argue that Plaintiffs' delay in asserting their claims is inexcusable and unreasonable, citing Volkswagen paralegal Scipione's testimony

that Defendants were not asked to stop using the vanity telephone number back in 1990 because "[v]anity telephone numbers weren't a big deal back then." Scipione Dep., 98:16-99:23, Ex. 7 to Smith Decl., Dkt. No. 97.  Finally, Defendants argue they are prejudiced by Plaintiffs' delay in bringing suit because over ninety seven percent of Shokan's sales are made by telephone.  See Smith Decl. ¶ 39.

Plaintiffs counter that (1) the terms of the 1991 Settlement Agreement unambiguously refute Defendants' claim of consent; (2) even if consent may be proved, Defendants exceeded the scope of any acquiescence in their unforeseeable use of 800-ALL-AUDI beyond that contemplated by the Settlement Agreement; (3) Defendants' bad faith justifies any delay by Plaintiffs in filing suit; and (4) because the likelihood of confusion is overwhelming, it clearly outweighs the effect of any delay.

Because the parties disagree as to the effect of the terms of the Settlement Agreement, analysis of Defendants' acquiescence and laches defenses must begin with an interpretation of said Agreement.  It is important to note that "[a] settlement agreement is a contract that is interpreted according to general principles of contract law." Omega Engineering, Inc. v. Omega, S.A., 432 F.3d 437, 443 (2d. Cir. 2005).  It is true that under New York law, where the terms of a contract are ambiguous but relevant extrinsic evidence as to its meaning is available, interpretation of same is a question of fact.  See New Windsor Volunteer Ambulance Corps, Inc. v. Meyers, 442 F.3d 101, 112 (2d Cir. 2006) (applying New York contract law principles to determine an issue of property ownership underlying a federal cause of action).  However, the initial inquiry of whether a contract is ambiguous or unambiguous is a question of law to be decided by the

court.  See In re Delta Air Lines, Inc., No. 05-17923, et al., 2008 WL 4444001, at
*5 (S.D.N.Y. Sept. 29, 2008) (citing Nowak v. Ironworkers Local 6 Pension Fund,
81 F.3d 1182, 1192 (2d Cir.1996)).  If the court finds the contract is unambiguous
on its face, it may then construe the contact as a matter of law, and grant summary
judgment.  See Medtech Products Inc. v. Ranir, LLC, No. 07-CV-3302, 2008 WL
4525510, at *20 (S.D.N.Y. Sept. 30, 2008) (citing Metro. Life Ins. Co. v. RJR
Nabisco Inc., 906 F.2d 884, 889 (2d Cir.1990)).  See also Deutsche Bank Sec., Inc.
v. Rhodes, — F.Supp.2d —, 2008 WL 4381619, at *7 (S.D.N.Y. 2008).  "A
contract is unambiguous on its face if it 'has a definite and precise meaning,
unattended by danger of misconception in the purport of the [contract] itself, and
concerning which there is no reasonable basis for a difference of opinion.'" Id.
(quoting Sayers v. Rochester Tel. Corp. Supplemental Mgmt. Pension Plan, 7 F.3d
1091, 1095 (2d Cir.1993) (quoting Breed v. Ins. Co. of N. Am., 46 N.Y.2d 351,
355, 413 N.Y.S.2d 352, 385 N.E.2d 1280 (1978))).  On the other hand, "[w]here
reasonable minds could be said to differ because the language the parties used in
their written contract is susceptible to more than one meaning-each as reasonable
as the other-and where extrinsic evidence of the parties' actual intent exists, it
should be submitted to the trier of fact." Consarc Corp. v. Marine Midland Bank,
N.A.,  996 F.2d 568, 573 (2d Cir. 1993).  However, it is important to note that a
contract may not be deemed ambiguous simply because the parties "urge different
interpretations" where the language used is "otherwise plain." Metro. Life, 906
F.2d at 889.  This is so especially where the interpretation urged by one party
would "strain[ ] the contract language beyond its reasonable and ordinary
meaning." Id. (quoting Bethlehem Steel Co. v. Turner Constr. Co., 2 N.Y.2d 456,
459, 161 N.Y.S.2d 90, 93, 141 N.E.2d 590, 593 (1957)).

Plaintiffs argue that by the express terms of paragraphs three and four of the Settlement Agreement,  Shokan agreed not to infringe Audi's trademarks, "including the word 'Audi,'" and that Shokan agreed "not to use the word Audi', except . . . as an adjective to describe the availability of parts or repair services for Audi vehicles . . . ."  Cook Decl. Ex. O, ¶¶ 3,4.  Accordingly, Plaintiffs argue, the Settlement Agreement unambiguously condemns the use of the word, "Audi" in Defendants' vanity telephone number.  Plaintiffs' argument is without merit. While relying on the language of paragraphs three and four of the Settlement Agreement, Plaintiffs fail to acknowledge that by the express language of paragraph five, they agreed that the attached advertisement, which clearly includes the vanity telephone number, 1-800-ALL-AUDI, as well as the phrase, "Audi Used Parts", "meet[s] the requirements of paragraphs 3 and 4, and shall not be challenged as infringing upon Audi AG's trademarks or trade dress."  Ex. 2 to Smith Decl.; Ex. O to Cook Decl.  Plaintiffs attempt to make an end run around this provision by arguing that the purpose of the Settlement Agreement was to address their claim that the Shokan Logo was an infringement of Audi's Football Logo®, and therefore did not involve Shokan's use of the vanity telephone number.  However, according to the express language of paragraph five of the Settlement Agreement, Plaintiffs "agree that Shokan's new logo, . . . , *and the advertisement attached as Exhibit A*, meet the requirements of paragraphs 3 and 4, and shall not be challenged as infringing upon Audi AG's trademarks or trade dress."  Id. (emphasis added).  The "advertisement attached as Exhibit A" clearly includes the vanity telephone number and the phrase, "Audi Used Parts."  See id. Thus, by the "definite and precise meaning" of the language in the Settlement Agreement, Plaintiffs agreed that the vanity telephone number, 1-800-ALL-AUDI,

22

as well as the language, "Audi Used Parts", do not infringe their trademarks.
Medtech Products Inc., 2008 WL 4525510, at *20.  Plaintiffs' attempt to have this
court interpret the language of paragraph five to refer only to the Shokan logo,
despite the language which clearly reflects that *both* the Shokan logo *and* the
attached advertisement do not infringe Plaintiffs' trademarks, would "strain[ ] the
[Agreement's] language beyond its reasonable and ordinary meaning." Metro.
Life, 906 F.2d at 889.  Accordingly, because the Settlement Agreement
unambiguously provides that Shokan's use of the vanity telephone number, 1-800-
ALL-AUDI, as well as the phrase,  "Audi Used Parts", do not infringe Plaintiffs'
trademarks or trade dress "and shall not be challenged" as such, the first element
of Defendants' acquiescence defense, that Plaintiffs actively represented they
would not assert a right or a claim, is established as a matter of law.[3]  See Ex. 2 to
Smith Decl.; Ex. O to Cook Decl.

 The court's analysis of Defendants' acquiescence and laches defenses does
not end here, however.  Plaintiffs also argue that even if the court concludes they
consented to Defendants' use of the vanity telephone number, Defendants still
cannot establish inexcusable delay or undue prejudice.

 Plaintiffs first contend that Defendants exceeded the scope of any
acquiescence in their unforeseeable use of 800-ALL-AUDI, beyond that
contemplated by the Settlement Agreement, and therefore, Defendants cannot

---

 [3] Despite their argument that the Settlement Agreement unambiguously prohibits
Shokan's use of the vanity telephone number, Plaintiffs nonetheless point to extrinsic evidence in
support of same.  Because the court concludes that the terms of the Settlement Agreement are
unambiguous, it will not address Plaintiffs' arguments regarding extrinsic evidence.  See Merrill
Lynch Bus. Fin. Servs., Inc. v. Ruvio Optical Corp., No. 04-Civ.-5128, 2008 WL 4615834, at *2
(S.D.N.Y. Oct. 14, 2008) (citing Waldman v. Riedinger, 423 F.3d 145, 150 (2d Cir.2005)).

establish that they relied to their detriment on Plaintiffs' consent.[4]  In support of same, Plaintiffs point to ProFitness Physical Therapy Center v. Pro-Fit Orthopedic and Sports Physical Therapy, P.C., 314 F.3d 62 (2d Cir. 2002).  There, the court found that "[w]hile a plaintiff may acquiesce in some uses of the mark and in any resulting likelihood of consumer confusion, that acquiescence does not extend to a use that has not yet materialized and is not foreseeable.  By using the mark in a different manner or in a new geographic area, a defendant may exceed the scope of the plaintiff's consent and be exposed to liability for that extra-consensual use." Id., at 69.  However, ProFitness involved an acquiescence defense to a trademark infringement claim based on the plaintiff's failure to respond to defendant's notice that it would change its business name to avoid confusion or further conflict.  See id., at 66.  Here, the parties entered into a Settlement Agreement whereby Plaintiffs unambiguously consented to Defendants' use of Plaintiffs' trademark.  In ProFitness, the defendant opened an office in Manhattan, where the plaintiff also had offices, which prompted the trademark infringement action.  See id.  Here, Plaintiffs have failed to identify any facts which would support a conclusion that Defendants have exceeded the scope of their usage of the vanity telephone number beyond that contemplated by the Settlement Agreement.  Instead, Plaintiffs cite the other alleged instances of infringement on behalf of Defendants,

---

[4] Plaintiffs also assert that Defendants' usage of Plaintiffs' trademarks, which exceeds the scope of the Settlement Agreement, also serves to rescind the Agreement.  In addition, Plaintiffs move for summary judgment on their purported claim of rescission.  Because Plaintiffs' motion to amend the Complaint to add a rescission claim was denied by Judge Homer on December 4, 2007 without ensuing objection, see Dkt. No. 111, Plaintiffs' pending arguments regarding their purported rescission claim will not be addressed.  See Fed. R. Civ. P. 72(a) ("A party may not assign as error a defect in the order not timely objected to.").

including the use of the AUDI® and AUDI RING LOGO® trademarks in their email signature and email address, on their website, and on signs at their business premises, as usage which exceeds the scope of the Settlement Agreement. Defendants assert acquiescence and laches defenses solely as to their use of the vanity telephone number and the phrase, "Audi Used Parts." Accordingly, Plaintiffs' conclusory argument that Defendants' use of the vanity telephone number exceeded the scope of the Settlement Agreement does not in any way diminish Defendants' assertion that they relied on Plaintiffs' consent to their detriment. It is undisputed that Shokan has been using and advertising its 800-ALL-AUDI vanity telephone number for over twenty years. Moreover, according to Smith's declaration, an overwhelming majority of Shokan's sales are made by telephone. <u>See</u> Smith Decl. ¶ 39. Significantly, Plaintiffs do not cite any evidence in the record which would contradict this assertion. Instead, Plaintiffs merely note that Defendants also have an online store on the Shokan website, a fact which is not inconsistent with Smith's assertion that ninety-seven percent of Shokan's sales come from telephone orders. Accordingly, there being no question of material fact regarding Defendants' detrimental reliance on Plaintiffs' consent, said element of the acquiescence and laches defenses is established as a matter of law.

Consent and prejudice having been established by Defendants as a matter of law, Plaintiffs nonetheless argue that Defendants cannot establish the final element of their acquiescence and laches defenses, to wit, inexcusable delay, because (1) Defendants' bad faith justifies any delay by Plaintiffs in filing suit and (2) the overwhelming likelihood of confusion here clearly outweighs the effect of any delay. In support of these arguments, Plaintiffs contend that their delay in filing suit is excused under the doctrine of "progressive encroachment" which provides

that a plaintiff is not obligated to file suit until the likelihood of confusion "looms large" and its rights to trademark protection have clearly ripened.  See ProFitness, 314 F.3d at 68.  However, it is also true that "a plaintiff cannot simply sleep on his rights" and still gain protection from the doctrine of progressive encroachment. Id.  Here, Plaintiffs contend that they did not become aware of Defendants' use of the vanity telephone number until 2003, and asserted their trademark infringement claims shortly thereafter.  The evidence belies such an assertion, however, considering the inclusion of the vanity telephone number in the very advertisement that prompted Plaintiffs' 1990 lawsuit.  Plaintiffs also contend that Defendants' bad faith intentional copying of Plaintiffs' trademarks prevents a finding of inexcusable delay under the doctrine of unclean hands.  Again, Defendants assert acquiescence and laches defenses solely as to Plaintiffs' infringement claims regarding use of the vanity telephone number and the phrase, "Audi Used Parts." Plaintiffs fail to cite any evidence in the record which would support a finding that either usage by Defendants amounted to a bad faith intent to infringe Plaintiffs' trademark.  Accordingly, Plaintiffs' progressive encroachment and unclean hands arguments fail.  Plaintiffs' final argument, that an overwhelming likelihood of confusion prevents a finding of inexcusable delay, also must fail.  Because the use of the vanity telephone number and the phrase, "Audi Used Parts" are sanctioned by the express terms of the Settlement Agreement, the court need not reach a likelihood of confusion analysis regarding same.  It is undisputed that at least twelve years passed between the execution of the Settlement Agreement and Plaintiffs' commencement of the present action.  Therefore, Defendants have established the final element of their acquiescence and laches defenses as a matter of law.  Accordingly, Defendants' motion for summary judgment on all claims

regarding their use of the 1-800-ALL-AUDI vanity telephone number and the phrase, "Audi Used Parts" is granted.

### *C. Breach of Contract*

Defendants argue they are entitled to summary judgment on their breach of contract claim because Plaintiffs breached the terms of the 1991 Settlement Agreement when they initiated this lawsuit.  Defendants rely on the above cited language in paragraph five of the Agreement, wherein Plaintiffs agreed that the attached advertisement, which includes the 1-800-ALL-AUDI vanity telephone number as well as the phrase, "Audi Used Parts" does not infringe Plaintiffs' trademarks, and wherein Plaintiffs agreed not to challenge the content of the advertisement.  See Ex. 2 to Smith Decl.  Plaintiffs fail to provide any meaningful opposition to Defendants' motion for summary judgment regarding the breach of contract claim.  Included in a footnote to Plaintiffs' papers in opposition to Defendants' motion for summary judgment, Plaintiffs refer to Defendants' breach of contract claim as "ridiculous" and tersely argue that the motion for summary judgment regarding said claim should be denied for all of the reasons set forth in Plaintiffs' arguments against the acquiescence and laches defenses.  See Pls.' Mem. of Law in Opp'n to Defs.' Mot. for Summ. J., at 17, n.5, Dkt. No. 105.

Defendants have prevailed on their acquiescence and laches defenses to any of Plaintiffs' claims regarding the use of the vanity telephone number and the phrase, "Audi Used Parts."  In doing so, Defendants have established the existence of an agreement and that Plaintiffs have breached the agreement.  Defendants also claim they have suffered damages by said breach, which include the fees and costs to defend this lawsuit.  Defendants having established the elements of their claim for breach of contract under New York Law, Defendants' motion for summary

judgment regarding said claim is granted.  See Chaffee v. Farmers New Century Ins. Co., No5:04-CV-1493, 2008 WL 4426620, at *2 (N.D.N.Y. Sept. 24, 2008).

### D.  Nominative Fair Use

Throughout their papers in support of their motion for summary judgment, and in opposition to Plaintiffs' motion, Defendants repeatedly contend that they only use the Audi Marks to fairly and accurately describe the Audi parts they sell. Pursuant to 15 U.S.C. § 1115(b)(4), it is a defense to the incontestability of a registered trademark:

> [t]hat the use of the name, term, or device charged to be an infringement is a use, otherwise than as a mark, of the party's individual name in his own business, or of the individual name of anyone in privity with such party, or of a term or device which is descriptive of and used fairly and in good faith only to describe the goods or services of such party, or their geographic origin[.]

15 U.S.C.A. § 1115(b)(4) (2002).

At oral argument, Defendants assert, for the first time, a nominative fair use defense, urging this court to adopt the legal analysis set forth by the Court of Appeals for the Third Circuit in Century 21 Real Estate Corporation v. Lending Tree, Incorporated, 425 F.3d 211 (3d Cir. 2005).  See Tr. 42:19-45:3. Consequently, the court has received virtually no briefing on this issue.

The defense of nominative fair use, originally set forth by the Ninth Circuit in New Kids on the Block v. News America Publishing Incorporated, 971 F.2d 302 (9th Cir.1992), is appropriate where (1) the product or service in question is not readily identifiable without use of the trademark; (2) only so much of the marks are used as is reasonably necessary to identify the product or service; and (3) the user does nothing that would, in conjunction with the mark, suggest

28

sponsorship or endorsement by the trademark holder.  See 971 F.2d at 308.  The Ninth Circuit has since held that where nominative fair use is asserted, the aforementioned three-prong test replaces the "likelihood of confusion" test for trademark cases.  See Playboy Enters., Inc. v. Welles, 279 F.3d 796, 801 (9th Cir. 2002).  In Century 21, the Third Circuit declined to entirely supplant the likelihood of confusion test, instead setting forth a two-step analysis in nominative fair use cases.  See Century 21, 425 F.3d at 220-222.  Initially, according to the Third Circuit's analysis, the plaintiff must prove a likelihood of confusion based on a balancing of the following four factors:

> (1) the price of the goods and other factors indicative of the care and attention expected of consumers when making a purchase; (2) the length of time the defendant has used the mark without evidence of actual confusion; (3) the intent of the defendant in adopting the mark; and (4) the evidence of actual confusion.

Id., at 222, 225 -226.  Once the plaintiff meets its burden of proving a likelihood of confusion, the defendant has the burden of showing:

> (1) that the use of plaintiff's mark is necessary to describe both the plaintiff's product or service and the defendant's product or service; (2) that the defendant uses only so much of the plaintiff's mark as is necessary to describe plaintiff's product; and (3) that the defendant's conduct or language reflect the true and accurate relationship between plaintiff and defendant's products or services.

Id., at 222.

The Court of Appeals for the Second Circuit has not yet analyzed a nominative fair use defense.  Cf. Weight Watchers Int'l, Inc. v. Luigino's, Inc., 423 F.3d 137, 143, n.4 (2d Cir. 2005) (finding it unnecessary to reach the nominative fair use argument); Courtenay Commc'ns Corp. v. Hall, 334 F.3d 210, 213, n.1 (2d Cir. 2003) (in vacating a district court's dismissal of a complaint

alleging various Lanham Act violations, cited <u>New Kids</u> to support its conclusion that defendant's alternate ground for dismissal, to wit, insufficient allegations of false endorsement, is without merit as defendant's use "suggests affiliation, sponsorship or endorsement" of its website by plaintiff); <u>Chambers v. Time Warner, Inc.</u>, 282 F.3d 147, 156 (2d Cir. 2002) (acknowledging the district court's application of the nominative fair use set forth in <u>New Kids</u> to support its dismissal of the complaint, but finding allegations of other instances of infringing conduct sufficient to remand for further proceedings).  However, of the district courts in this circuit that have discussed a nominative fair use defense, all have followed the standard set forth by the Ninth Circuit in <u>New Kids</u>, rather than the Third Circuit's standard set forth in <u>Century 21</u>.  <u>See</u> <u>Yurman Studio, Inc. v. Castaneda</u>, Nos. 07 Civ. 1241, 07 Civ. 7862, 2008 WL 3861219, at *7 (S.D.N.Y. Aug. 19, 2008); <u>Tiffany (NJ) Inc. v. eBay, Inc.</u>, ___ F.Supp.2d ___, 2008 WL 2755787, at *26, n.27 (S.D.N.Y. Jul. 14, 2008); <u>S&L Vitamins, Inc. v. Australian Gold, Inc.</u>, 521 F.Supp.2d 188, 207 (E.D.N.Y. 2007); <u>Merck & Co., Inc. v. Mediplan Health Consulting, Inc.</u>, 425 F.Supp.2d 402, 413 (S.D.N.Y. 2006); <u>Nasdaq Stock Mkt., Inc. v. Archipelago Holdings, LLC</u>, 336 F.Supp.2d 294, 304 (S.D.N.Y. 2004).  The single court that acknowledged a conflict between <u>Century 21</u> and <u>Playboy</u> regarding whether nominative fair use should be characterized as an affirmative defense or as a substitute to the likelihood of confusion analysis concluded that the result there would be the same under either case.  <u>See</u> <u>Tiffany</u>, 2008 WL 2755787, at *26, n.27.  Accordingly, this court declines to deviate from the other district courts in our circuit, and will likewise apply the Ninth Circuit's analysis to this case.

Pursuant to the Ninth Circuit's holding in <u>Playboy</u>, the court shall conduct

the three-prong analysis set forth in New Kids instead of a likelihood of confusion balancing test, due to Defendants' assertion of a nominative fair use defense.  See Playboy, 279 F.3d at 801.  Again, pursuant to New Kids, nominative fair use may be found where (1) the product or service in question is not readily identifiable without use of the trademark; (2) only so much of the marks are used as is reasonably necessary to identify the product or service; and (3) the user does nothing that would, in conjunction with the mark, suggest sponsorship or endorsement by the trademark holder.  See New Kids, 971 F.2d at 308.  "[U]se of [a trademark] is only nominative if it does not imply sponsorship or endorsement by the trademark holder."  Yurman Studio, Inc., 2008 WL 3861219, at *7 (citation omitted).

Here, Defendants have failed to sufficiently explain how any of the remaining alleged incidents of infringement are appropriately deemed nominative fair use of Plaintiffs' marks.  To summarize, those remaining alleged incidents of infringement are (1) Defendants' use of the AUDI RING LOGO® on their website; (2) Defendants' use of the AUDI RING LOGO® as a sign or sticker on a door at their business premises; (3) Defendants' use of the AUDI® mark by answering their business telephone, "all Audi"; (4) Defendants' use of the AUDI® mark in their email signature block, "Shokan Audi Parts"; (5) Defendants' use of the AUDI® mark in their email address, allaudi.shokan@verizon.net; and (6) Defendants' use of the AUDI® mark in the phrase, "Audi Parts Warehouse" as a sign or sticker on a door at their business premises.  Unlike in New Kids, where the court found nominative fair use to exist because, among other things, there was nothing to suggest the plaintiff sponsored defendant's use of the mark, here, each of the alleged infringing uses could imply sponsorship by Plaintiffs of Defendants.

31

Accordingly, Defendants here cannot avoid a finding of liability on Plaintiffs' infringement claims based on a nominative fair use defense. Therefore, the court will address the merits of those claims, including the likelihood of confusion analysis.

### E.  Trademark Infringement and False Designation of Origin Claims

Plaintiffs' claims for trademark infringement under 15 U.S.C. § 1114; false designation of origin under 15 U.S.C. § 1125(a); and common law trademark infringement,[5] may all be analyzed under the same two-prong test set forth in Gruner + Jahr USA Publishing v. Meredith Corporation, 991 F. 2d 1072 (2d Cir. 1993), which is that first the court must decide whether the plaintiff has a valid mark that is entitled to protection, and then whether the defendant's use of the mark is likely to cause consumers confusion as to the origin or sponsorship of the defendant's goods.  See Virgin Enters. LTD v. Nawab, 335 F.3d 141, 146 (2d Cir.

---

[5] The court notes that Defendants also seek summary judgment on Plaintiffs' claims for false advertising and trade dress infringement, set forth in Count III of the Complaint. To prevail on a claim for trade dress infringement under 15 U.S.C. § 1125(a), the plaintiff must prove (1) that the mark is distinctive as to the source of the good, and (2) that there is a likelihood of confusion between its good and the defendant's, and (3) that an unregistered trade dress is not functional. See Cartier, Inc. v. Sardell Jewelry, Inc., No. 07-1813-CV, 2008 WL 4206330, at *1 (2d Cir. 2008) (citing Yurman Design, Inc. v. PAJ, Inc., 262 F.3d 101, 115 (2d Cir.2001)). To prevail on a false advertising claim under § 1125(a), "a plaintiff must show that either: 1) the challenged advertisement is literally false, ... 2) while the advertisement is literally true it is nevertheless likely to mislead or confuse consumers[, or 3)] ... that the claim is false by necessary implication." Procter & Gamble Co. v. Ultreo, Inc., No. 07 Civ. 8379, 2008 WL 4104010, at *4 (S.D.N.Y. Aug. 28, 2008) (internal citation and quotation omitted). Plaintiffs fail to address either claim at oral argument or in their papers in opposition to Defendants' motion for summary judgment or in support of their own motion for summary judgment. Accordingly, both claims are dismissed.

2003) (noting that <u>Gruner</u> two-prong test applies to claims for trademark infringement, whether brought under 15 U.S.C. § 1114 or 15 U.S.C. § 1125(a)); <u>Krasnyi Oktyabr, Inc. v. Trilini Imports</u>, No. CV-05-5359, 2008 WL 4353649, at *7 (E.D.N.Y. Sept. 25, 2008) (<u>citing</u> Morningside Group Ltd. v. <u>Morningside Capital Group, L.L.C.</u>, 182 F.3d 133, 137 (2d Cir.1999)) (noting that a false designation of origin claim under 15 U.S.C. § 1125(a) may be analyzed under the same elements as a claim for trademark infringement under § 1114); <u>FragranceNet.com, Inc. v. Frangrancex.com, Inc.</u>, 493 F.Supp.2d 545, 548 (E.D.N.Y. 2007) (noting that the elements of a claim for trademark infringement under 15 U.S.C. § 1125(a) are identical to a claim for common law trademark infringement).  Plaintiffs bear the burden of proving both elements of their trademark infringement claims.  <u>See</u> <u>Gruner</u>, 991 F. 2d at 1075.

### 1. Valid Mark

Registration of a trademark entitles the owner to a presumption that its mark is valid and renders the mark incontestible after five years of continuous use.  <u>See</u> <u>Wal-Mart Stores, Inc. v. Samara Bros., Inc.</u>, 529 U.S. 205, 209, 120 S.Ct. 1339, 1342 (2000) (<u>citing</u> 15 U.S.C. §§ 1057(b); 1065).  Plaintiffs have submitted copies of their trademark registrations for the AUDI® and AUDI RING LOGO® trademarks, registration numbers 708,352 and 906,525, respectively.  <u>See</u> Exs. A & B to Cook Decl.  In addition, Volkswagen trademark paralegal Linda Scipione declares that said trademarks have been in use in the United States since they were registered on December 13, 1960 and January 26, 1971, respectively.  <u>See</u> ¶¶ 4 & 5 to Decl. of Linda Scipione, Oct. 31, 2007, Dkt. No. 95-37.  A search by this court of the United States Patent and Trademark Office's ("USPTO") Trademark Electronic Search System ("TESS") verifies the existence of the marks, their issue

33

dates, and that same are owned by defendant Audi.  Defendants have offered no evidence to the contrary.  Instead, Defendants incorrectly contend that proof of ownership of a trademark must be certified, citing caselaw which merely supports the proposition that trademarks may be authenticated because they are certified, not that certification is required.  See Nabisco v. Warner-Lambert Co., 32 F.Supp.2d 690, 695 (S.D.N.Y. 1999).[6]  Accordingly, Plaintiffs have established the validity of the AUDI® and AUDI RING LOGO® trademarks as a matter of law.

## 2.  Likelihood of Consumer Confusion

When deciding the issue of whether there is a likelihood of consumer confusion, courts in the Second Circuit apply the eight factors set forth in Polaroid Corporation v. Polarad Electronics Corporation, 287 F.2d 492, 495 (2d Cir. 1961). See Natural Organics, Inc. v. Nutraceutical Corp., 426 F.3d 576, 578 (2d Cir. 2005) (citing Polaroid, at 495).  The "Polaroid factors" are as follows:

> (1) strength of the plaintiff's mark;
> (2) similarity of the parties' marks;
> (3) proximity of the parties' products in the marketplace;

---

[6] In a footnote, Defendants also challenge Volkswagen's standing as a plaintiff in this action.  See Defs.' Mem. of Law in Opp'n to Pls.' Mot. for Summ. J. , at 18 n.12, Dkt. No. 107-1.  Courts in this circuit have held that an exclusive licensee of a trademark owner has standing to prosecute a claim for trademark infringement.  See Novartis Animal Health US, Inc. v. LM Connelly & Sons, Pty Ltd., No. 04-CV-10213, 2005 WL 1902085, at *3 (S.D.N.Y. June 14, 2005) (citing G.H. Mumm Champagne v. E. Wine Corp., 142 F.2d 499 (2d Cir.1944)).  Here, Plaintiffs have submitted evidence that Volkswagen is "the exclusive U.S. licensee for Audi [,]" Decl. of Linda Scipione, Oct. 31, 2007, ¶ 2, Dkt. No. 95-37, and Defendants have submitted no evidence to the contrary.  Accordingly, Volkswagen has standing to bring the trademark infringement claims in this action against Defendants.

(4) likelihood that the plaintiff will bridge the gap between the products (enter a market related to that in which the defendant sells its product);
(5) evidence of actual confusion between the two marks;
(6) the defendant's bad faith (intent in adopting the mark);
(7) quality of the defendant's product; and
(8) sophistication of the relevant consumer group.

See Playtex Prods., Inc. v. Georgia-Pacific Corp., 390 F.3d 158, 162 (2d Cir. 2004); Natural Organics, Inc., 426 F.3d at 578.  Although district courts are given "considerable deference" in balancing these factors, the Second Circuit has instructed that

> courts generally should not treat any single factor as dispositive; nor should a court treat the inquiry as a mechanical process by which the party with the greatest number of factors wins.  Instead, the court should focus on the ultimate question of whether consumers are likely to be confused.

Natural Organics, Inc., 426 F.3d at 578 (citing Playtex Prods., 390 F.3d at162 (internal quotation and citation omitted)).  Particularly relevant here, resolution of each Polaroid factor presents a question of fact.  See Hi-Tech Pharmacal Co., Inc. v. Hi-Tech Pharm., Inc., No. 05-CV-2674, 2007 WL 1988737, at *5 (E.D.N.Y. July 5,2007).  Balancing of the Polaroid factors, however, is a question of law, but only "[w]here the predicate facts are beyond dispute[.]" Playtex Prods., 390 F.3d at 162.

Not surprisingly, Plaintiffs and Defendants are at polar opposites of the spectrum as to how the court should weigh each of the Polaroid factors in this case.  Consequently, the court will evaluate each factor seriatim.

### a.  Strength of Plaintiffs' Mark and Similarity of the Parties' Marks

35

"Determination of strength ... begins with inquiry as to whether the mark has the inherent distinctiveness that would entitle it to protection in the absence of secondary meaning." Star Indus., Inc. v. Bacardi & Co. Ltd., 412 F.3d 373, 384 (2d Cir. 2005).  Where, as here, a trademark is registered and incontestible, it "enjoys a conclusive presumption of distinctiveness." Savin Corp. v. Savin Group, 391 F.3d 439, 457 (2d Cir. 2004) (citing Park 'N Fly, Inc. v. Dollar Park and Fly, Inc., 469 U.S. 189, 204-05, 105 S.Ct. 658 (1985)).

Moreover, as Plaintiffs point out, courts have found their marks to be strong.  See Au-Tomotive Gold, Inc. v. Volkswagen of Am., Inc., 457 F.3d 1062, 1076 (9th Cir. 2006) ("The Volkswagen and Audi marks, which are registered and have been in use for more than fifty years, are strong, distinctive marks[.]"); Audi AG v. D'Amato, 469 F.3d 534, 543 (6th Cir. 2006) ("Audi's trademarks are world-famous[.]").  See also Volkswagen Astiengesellschaft v. Uptown Motors, No. 91-CV-3447, 1995 WL 605605, at *3 (S.D.N.Y. May 11, 1995) (Finding that "the [Volkswagen and Audi] marks are, indeed, strong.").

As to the similarity between the parties' marks, Plaintiffs argue the marks are identical, which is powerful evidence of a likelihood of confusion.  Where marks are "essentially identical[,]" the second factor of the Polaroid analysis weighs in favor of the plaintiff.  Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co., 799 F.2d 867, 873 (2d Cir. 1986).  In such a case consumers are likely "to believe that [defendant] somehow is associated with [plaintiff] or at least has consented to the use of its trademark." Id.

Defendants contend the first two Polaroid factors, to wit, strength of the Plaintiffs' marks and similarity between the parties' marks, are inapplicable here because Defendants admit to their use of Plaintiffs' marks but claim a legal right

36

to do so, citing Bumble Bee Seafoods, LLC v. UFS Industries, Inc., 71 U.S.P.Q.2d 1684, 1690, No. 04-CV-2105, 2004 WL 1637017 (S.D.N.Y. Jul. 24, 2004) for support.  In Bumble Bee, defendant sold tuna salad to delicatessens and supermarkets in containers which included the language, "Made with Bumble Bee Tuna" on the lids.  See id., at 1686.  Defendant in that case argued that its use of the registered trademark, BUMBLE BEE® was fair use, as it was descriptive and used fairly and in good faith pursuant to 28 U.S.C. § 2226(b)(4).  See id., at 1690.

Again, Defendants fail to explain how any of the remaining alleged incidents of infringement constitute fair use of Plaintiffs' marks.  The parties' marks being identical, and Plaintiffs having established that their marks are strong, the court finds this factor weighs in favor of a finding of likelihood of confusion.

### b. Proximity of the Parties' Products in the Marketplace & Likelihood that Plaintiffs Will Bridge the Gap

The extent to which the parties' products compete with each other is the relevant inquiry when evaluating their proximity.  See Brennan's, Inc. v. Brennan's Rest., L.L.C., 360 F.3d 125, 134 (2d Cir. 2004).  Market proximity and geographic proximity comprise the competitive proximity factor.  See id.  "Market proximity asks whether the two products are in related areas of commerce and geographic proximity looks to the geographic separation of the products.  Both elements seek to determine whether the two products have an overlapping client base that creates a potential for confusion."  Id.  A mark that is used in a geographically remote marketplace may still be protected in a distant market, especially where there is evidence of advertising or a strong reputation in that market.  See id.  "Products which directly compete in the marketplace clearly warrant a finding of the highest degree of competitive proximity."  Hasbro, Inc. v.

Lanard Toys, Ltd., 858 F.2d 70, 77 (2d Cir. 1988).

Regarding the likelihood that Plaintiffs will "bridge the gap," same "refers to the likelihood that the senior user will enter the junior user's market in the future, or that consumers will perceive the senior user as likely to do so." Star Industries, Inc. v. Bacardi & Co. Ltd., 412 F.3d 373, 387 (2d Cir. 2005). Where the parties' products are found to be in close proximity, there is no gap to bridge, and accordingly this factor is irrelevant to the Polaroid analysis. See id.

Plaintiffs contend that the parties are in close proximity because Shokan competes directly with Audi, as both entities sell Audi parts in the United States. Consequently, Plaintiffs argue, the "bridging the gap" factor is irrelevant here. Defendants argue that proximity, when viewed in connection with consumer sophistication, weighs in favor of the conclusion that consumers are not likely to be confused. Defendants argue there is no possibility that Shokan will bridge the gap in the marketplace by entering the new Audi vehicle market. While the appropriate analysis under this factor is whether Audi will enter Shokan's market, not the other way around as Defendants suggest, Plaintiffs are correct that the parties' products are in proximity as they compete with one another, and therefore the "bridge the gap" factor is irrelevant to the Polaroid analysis here. Moreover, Defendants' argument that proximity weighs in their favor because the high level of consumer sophistication militates against a finding of consumer confusion carries little weight, considering that due to the similarity of the parties' marks, as will be explained *infra*, consumer sophistication is irrelevant to the Polaroid analysis. Therefore, the proximity factor weighs in favor of a finding of likelihood of confusion.

### *c.  Evidence of Actual Confusion*

"[I]t is black letter law that actual confusion need not be shown to prevail under the Lanham Act, since actual confusion is very difficult to prove and the Act requires only a likelihood of confusion as to source."  Savin Corp. v. Savin Group, 391 F.3d 439, 459 (2d Cir. 2004) (quoting Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co., 799 F.2d 867, 875 (2d Cir. 1986)).  However, where, as here, a plaintiff seeks an award of damages under the Lanham Act,

> it is well settled that . . . the plaintiff must prove either actual
> consumer confusion or deception resulting from the violation, or that
> the defendant's actions were intentionally deceptive thus giving rise
> to a rebuttable presumption of consumer confusion.

Champagne v. Diblasi, 36 Fed.Appx. 15, 17 (2d Cir. 2002) (citing, among others, Getty Petroleum Corp. v. Island Transp. Corp., 878 F.2d 650, 655 (2d Cir.1989); Res. Developers, Inc. v. Statue of Liberty-Ellis Island Found., Inc., 926 F.2d 134, 140 (2d Cir.1991) (internal quotations omitted)).

Here, Plaintiffs cite one letter from a Shokan customer, dated October 9, 1990, as evidence of actual confusion.  See Ex. U to Cook Decl.  The letter demonstrates that the customer was under the impression that Shokan was an "Audi Part Distributor" and "expect[ed] quality service from anyone connected with the Audi name."  Id.  Defendants question the admissibility of the letter, but argue that nonetheless, it is *de minimis* evidence of confusion, and therefore is insufficient to create a triable question of fact.  Defendants further point out that Plaintiffs' failure to provide survey evidence of confusion is evidence of a lack of confusion.

While it is true that "the absence of surveys is evidence that actual

39

confusion cannot be shown, a trier of fact may still conclude that actual confusion exists in the absence of such evidence, so long as there is other evidence of actual confusion." The Sports Authority, Inc. v. Prime Hospitality Corp., 89 F.3d 955, 964 (2d Cir. 1996) (internal citations omitted). Here, Plaintiffs argue there is evidence of actual confusion, pointing to the letter Audi received from one of Shokan's customers. However, as Defendants correctly retort, "[a] single anecdote of confusion over the entire course of competition . . . constitutes *de minimis* evidence insufficient to raise triable issues." Savin Corp., 391 F.3d at 459 (quoting Nora Beverages, Inc. v. Perrier Group of Am., Inc., 269 F.3d 114, 124 (2d Cir.2001)) (internal quotations omitted).

In any event, Plaintiffs argue, they need not prove actual confusion because Defendants acted in bad faith, thus a presumption of confusion exists. Considering that Plaintiffs' evidence of actual confusion amounts to a single customer letter and is therefore *de minimis* evidence, and that as the following discussion makes clear, questions of fact exist as to Defendants' bad faith, the actual confusion factor weighs against a finding of a likelihood of confusion.

### *d. Defendants' Bad Faith*

In weighing a defendant's bad faith, the concern is "whether the defendant adopted its mark with the intention of capitalizing on [the] plaintiff's reputation and goodwill and any confusion between his and the senior user's product." Cadbury Beverages, Inc. v. Cott Corp., 73 F.3d 474, 482 -483 (2d Cir. 1996) (quotation omitted). See also Star Industries, Inc., 412 F.3d at 388. It is true, as Plaintiffs here argue, that "[w]here a second-comer acts in bad faith and intentionally copies a trademark or trade dress, a presumption arises that the copier has succeeded in causing confusion." Paddington Corp. v. Attiki Imp. & Distrib.,

Inc., 996 F.2d 577, 586 (2d Cir. 1993).  Courts may evaluate whether a defendant had "actual or constructive knowledge" of the plaintiff's trademark in order to determine the defendant's intent.  See id., at 587.  Further, where, in addition to such knowledge, the similarity between plaintiff's mark and defendant's alleged infringing use is "so strong that it seems plain that deliberate copying has occurred," courts have found bad faith.  Id.  Where the alleged infringing mark is identical in style and name to the plaintiff's mark, and use began subsequent to plaintiff's registration of its mark, the burden of "explanation and persuasion" rests with defendant.  Cadbury Beverages, Inc., 73 F.3d at 483 (citing Kiki Undies Corp. v. Promenade Hosiery Mills, Inc., 411 F.2d 1097, 1101 (2d Cir.1969)).  On the other hand, as Defendants here point out, where the alleged infringer used a plaintiff's mark to  "advertise[] a truthful fact in an accurate manner" bad faith may not be found.  Bumble Bee Seafoods, LLC, 71 U.S.P.Q.2d at 1691.

Here, as evidence of bad faith, Plaintiffs cite Defendants' use of identical copies of Audi's trademarks on Shokan's website, signage, and in email communications with customers, with full knowledge of Audi's use and ownership of the marks.  Because the parties' marks are identical, the burden of persuasion rests with Defendants regarding their intent in the use of Plaintiffs' marks. Defendants contend that they use the marks to advertise the sale of used Audi parts.  As evidence of good faith, Defendants argue that they have advertised in a truthful manner and regularly referred customers to Audi dealers.  Again, Defendants fail to explain how the remaining incidents of alleged infringement constitute fair use.  Nonetheless, considering that "[s]ubjective issues such as good faith are singularly inappropriate for determination on summary judgment," the court declines to hold as a matter of law that Defendants here acted in bad faith at

41

this stage of the litigation.  Cadbury Beverages, Inc.,  73 F.3d at 483 (quoting American Int'l. Group, Inc. v. London Am. Int'l Corp., 664 F.2d 348, 353 (2d Cir.1981)).

### e.  Quality of the Defendants' Product

The analysis of the quality of the Defendants' product concerns "whether defendant[s'] products or services are inferior to plaintiff[s'], thereby tarnishing plaintiff[s'] reputation if consumers confuse the two." Morningside Group, Ltd. v. Morningside Capital Group, L.L.C., 182 F.3d 133, 142 (2d Cir. 1999).  However, this factor "cuts both ways" in that "[p]roducts of equal quality may tend to create confusion as to the source because of that very similarity of quality." Id.

Plaintiffs again cite the single customer complaint Audi received in 1990 as evidence of the poor quality of Shokan's products and service.  Nonetheless, Plaintiffs argue, the poor quality of Defendants' products is not essential to its case for infringement because Plaintiffs are still entitled to protect their trademarks against a top quality infringer.  See Casa Editrice Bonechi, S.R.L. v. Irving Weisdorf & Co., Ltd., No. 95-CV-4008, 1995 WL 528001, at *10 (S.D.N.Y. Sept. 6, 1995) (quoting Mobil Oil Corp. v. Pegasus Petroleum Corp., 818 F.2d 254, 260 (2d Cir. 1987) ("It is well-settled that a senior user may sue to protect his reputation even where the infringer's goods are of top quality.")

Defendants argue that this factor has little relevance since they are selling Audi parts, thus the quality of their and Plaintiffs' products is identical.  However, "a lack of difference in quality between goods has been held to support the inference that they emanate from the same source." Id., citing Centaur Commc'ns v. A/S/M Commc'ns, Inc., 830 F.2d 1217, 1228 (2d Cir. 1987); Lois Sportswear, U.S.A., Inc., 799 F.2d at 875.  It is undisputed that Defendants sell used and new

42

Audi parts.  Accordingly, the quality of the products Defendants sell are similar to that of Plaintiffs'.  Thus, it is unlikely that Audi's reputation will be tarnished by Defendants' sale of an inferior product.  Again, Plaintiffs' evidence of the low quality of Defendants' products is *de minimis*, and thus not considered in this analysis.  Therefore, the quality of Defendants' products weighs against a finding of a likelihood of confusion.

### *f.  Sophistication of the Consumer Group*

When assessing the likelihood of confusion, an examination of the sophistication of the relevant consumer group, i.e. purchasers of each of the parties' goods or services, must be conducted.  See Sports Authority,  89 F.3d at 965.  In examining the sophistication of the parties' consumers, the court "must consider [t]he general impression of the ordinary purchaser, buying under the normally prevalent conditions of the market and giving the attention such purchasers usually give in buying that class of goods."  Id. (quoting W.W.W. Pharm. Co. v. Gillette Co., 984 F.2d 567, 575 (2d Cir.1993)).  "The more sophisticated the purchaser, the less likely he or she will be confused by the presence of similar marks in the marketplace."  Artisan Mfg. Corp. v. All Granite & Marble Corp., 559 F.Supp.2d 442, 453 (S.D.N.Y. 2008) (quoting Savin Corp., 391 F.3d at 461.)   On the other hand, the court is mindful that "where the products are identical and the marks are identical, the sophistication of buyers cannot be relied on to prevent confusion."  Banff, Ltd. v. Federated Dept. Stores, Inc.,  841 F.2d 486, 492 (2d Cir. 1988).

Here, Plaintiffs argue that Defendants' customers are relatively unsophisticated because they are Internet navigators, and because the cost of Defendants' products is low.  Nonetheless, Plaintiffs argue, customer

sophistication cannot be relied on to show lack of confusion where, as here, the parties' products are closely related and the marks used are identical. Defendants counter that the cost and knowledge associated with the research, purchase and installation of used auto parts requires the highest level of sophistication, and that their inventory, see Ex. 38 to Smith Decl., Nov. 30, 2007, Dkt. No. 110-2, evidences the high level of Shokan's prices. Moreover, Defendants contend that there is no legal basis for Plaintiffs' argument that customer sophistication is irrelevant where the marks used are identical, citing a case in which they argue the court found no consumer confusion based on customer sophistication despite the parties being in the same business and having identical business names. See Defs.' Reply Mem. of Law in Supp. of Mot. for Summ. J., at 3, Dkt. No. 110 citing Merchant & Evans, Inc. v. Roosevelt Bldg. Prods. Co., 963 F.2d 628, 636-637 (3d Cir. 1992). Not only do Defendants provide an incorrect citation, they misrepresent the court's holding. The court in Merchant & Evans cited Perini Corporation v. Perini Construction, Incorporated, 915 F.2d 121 (4th Cir. 1990), wherein the Court of Appeals for the Fourth Circuit noted the lower court's finding that "(1) both plaintiff and defendant were in the construction business; (2) both called themselves "Perini"; (3) both firms used the same marketing channels and occasionally bid for the same jobs; and (4) there was evidence of actual confusion[.]" Merchant & Evans, Inc., 963 F.2d at 637 (citing Perini Corp., 915 F.2d at 127.) However, it is clear from a reading of both Merchant & Evans and Perini that the Perini court did *not* find a lack of consumer confusion based on customer sophistication, but instead remanded to the district court due to the existence of a material question of fact as to customer sophistication. See id.

Nonetheless, although Defendants' consumers are arguably sophisticated,

because the marks used by Defendants are identical to Plaintiffs' marks, the level of customer sophistication is not relevant to the <u>Polaroid</u> analysis in this case.

### g.  *Weighing of the Polaroid Factors*

While a majority of the relevant <u>Polaroid</u> factors weigh in favor of a finding of a likelihood of confusion, questions of fact remain as to Defendants' bad faith in their use of Plaintiffs' marks.  Again, the court is mindful that it is not to treat the Polaroid analysis as "a mechanical process by which the party with the greatest number of factors wins [but should instead] focus on the ultimate question of whether consumers are likely to be confused."  <u>Natural Organics, Inc.</u>, 426 F.3d at 578 (<u>citing</u> <u>Playtex Prods.</u>, 390 F.3d at162 (internal quotation and citation omitted)).  However, the court is equally mindful that the balancing of the <u>Polaroid</u> factors is a question of law only "[w]here the predicate facts are beyond dispute[.]" <u>Playtex Prods.</u>, 390 F.3d at 162.  Accordingly, a discussion of the factual questions or lack thereof regarding each of the remaining alleged incidents of infringement is in order.

First, regarding Defendants' use of the AUDI RING LOGO® on their website, questions of fact remain as to the length of time the Logo appeared on the website and Defendants' knowledge regarding same.  Defendants correctly point out that the Adams Declaration cannot authenticate the search results from www.archive.org because such evidence may only be authenticated by a knowledgeable employee of the website.  <u>See</u> <u>Chamilia, LLC v. Pandora Jewelry, LLC</u>, No. 04-CV-6017, 2007 WL 2781246, at *6 n.4 (S.D.N.Y. Sept. 24,2007) (finding such evidence inadmissable under Federal Rule of Evidence 901; <u>Novak v. Tucows, Inc.</u>, No. 06-CV-1909, 2007 WL 922306, at *5 (E.D.N.Y. March 26, 2007) (noting such evidence is not authenticated and inadmissible hearsay).  <u>See</u>

also St. Luke's Cataract & Laser Inst. v. Sanderson, No. 8:06-CV-223, 2006 WL 1320242 (M.D. Fla. May 12, 2006); Telewizja Polska USA, Inc. v. Echostar Satellite Corp., No. 02-cv-3293, 2004 WL 2367740 (N.D. Ill. Oct. 15, 2004). Nonetheless, other evidence exists which would support Plaintiffs' contention that the Logo appeared on Defendants' website for two years. Defendants' web designer, whom Smith contends placed the Logo on the website, testified that the Logo appeared on the website when it first went live in 2001, after approval by either Smith or his son, Aaron. Smith and Aaron each allege being unaware of the existence of the Logo on the website until 2003, when it is undisputed that Plaintiffs notified Defendants of same. Because questions of fact remain regarding the length of time the Logo appeared on the website, as well as Defendants' knowledge regarding same, the court cannot decide as a matter of law that the Logo's existence on the website created a likelihood of consumer confusion, or that Defendants acted in bad faith in placing the Logo on the website.

Questions of fact also exist regarding whether any customer could view either of the doors at Shokan's premises where the AUDI RING LOGO® and the "Audi Parts Warehouse" signs/stickers appear, thus preventing a determination of likelihood of confusion as a matter of law. Plaintiffs submit evidence that at least forty three customers visited Shokan's facility within a two-year period. Smith declares, however, that no customer is ever permitted to browse or shop at Shokan's facility. Also, while a Shokan employee testified that a business meeting at Shokan's facility could "possibly" take place in the lunchroom, Smith declared that Shokan does not use any signage at its facility that may be viewed by a member of the public. Accordingly, questions of fact remain as to whether these

46

signs/stickers are visible to customers, preventing a finding of a likelihood of confusion as a matter of law regarding same.

There is also a conflict in the factual record as to whether anyone at Shokan ever answered the phone, "all Audi." On one hand, an employee of Plaintiffs' counsel declares that on multiple occasions when he telephoned Shokan, the person answering the telephone stated, "all Audi." On the other hand, two of Shokan's employees, including the person primarily responsible for answering the telephone, testified that they never heard anyone say, "all Audi" when answering the telephone. Although Smith testified that he "may have" said "all Audi" when answering the phone, he also declared that he cannot remember a single instance when he did so. Accordingly, the court cannot determine as a matter of law whether, and if so, how often, persons answering Shokan's business telephone did so by stating, "all Audi" and therefore the court cannot determine as a matter of law that a likelihood of confusion exists regarding same.

Therefore, Plaintiffs' and Defendants' motions for summary judgment are denied to the extent either relies on the absence of material fact regarding the aforementioned alleged incidents of infringement.

Regarding Defendants' use of the AUDI® mark in their email address, allaudi.shokan@verizon.net, Plaintiffs identify as evidence of consumer confusion a copy of a single message sent from that email address to Shokan's webmaster. Plaintiffs also submit copies of Defendants' website which include the email address as contact information. However, Plaintiffs use the www.archive.org website to generate the submitted images without authentication from a representative of that website. Accordingly, the court will not consider same in support of Plaintiffs' motion for summary judgment. Because Plaintiffs have not

met their burden of proving the elements of their infringement claim as it relates to Defendants' use of the email address, allaudi.shokan@verizon.net, Defendants' motion for summary judgment is granted, and Plaintiffs' motion for summary judgment is denied, in this regard.

Finally, no questions of fact remain regarding Defendants' use of the AUDI® mark through the email signature block, "Shokan Audi Parts." Defendants' attempt to dispute Plaintiffs' allegation that same appeared on 38,000 messages produced during discovery fails by Smith's admission that a sampling of those emails are a true and accurate representation of messages sent by Shokan. Considering the strength of the AUDI® mark, that Defendants' use is identical to Plaintiffs' mark, and that the parties are in competitive proximity, the court finds as a matter of law that Defendants' use of the email signature block, "Shokan Audi Parts" creates a likelihood of consumer confusion. Accordingly, Plaintiffs' motion for summary judgment is granted and Defendants' motion for summary judgment is denied, regarding Plaintiffs' infringement claim as it relates to the signature block, "Shokan Audi Parts."

### *F.  Trademark and Trade Dress Dilution*

The Federal Trademark Dilution Act ("FTDA"), which was amended effective October 6, 2006 to become the Trademark Dilution Revision Act ("TDRA"), codified at 25 U.S.C. § 1125(c), creates a cause of action for trademark dilution as follows:

> [T]he owner of a famous mark that is distinctive, inherently or through acquired distinctiveness, shall be entitled to an injunction against another person who, at any time after the owner's mark has become famous, commences use of a mark or trade name in commerce that is likely to cause dilution by blurring or dilution by

tarnishment of the famous mark, regardless of the presence or absence of actual or likely confusion, of competition, or of actual economic injury.

25 U.S.C. § 1125(c)(1) (2007).  Thus in order to establish a claim for trademark dilution under the FTDA, a plaintiff must prove that

> (1) its mark is famous; (2) the defendant is making commercial use of the mark in commerce; (3) the defendant's use began after the mark became famous; and (4) the defendant's use of the mark dilutes the quality of the mark by diminishing the capacity of the mark to identify and distinguish goods and services.

Savin Corp. v. Savin Group, 391 F.3d 439, 451 (2d Cir. 2004).  See also § 1125(c)(1).

Although the present action was filed before the TDRA became effective, the Second Circuit has held that where a plaintiff is seeking injunctive relief, the amended Act, including its requirement that a plaintiff prevail where the use is *likely* to cause dilution, is retroactive to pre-TDRA conduct.  See Starbucks Corp. v. Wolfe's Borough Coffee, Inc., 477 F.3d 765, 766 (2d Cir. 2007) (noting that Congress amended the FTDA in response to the Supreme Court's construction requiring a showing of actual dilution in Moseley v. V Secret Catalogue, Inc., 537 U.S. 418, 433, 123 S.Ct. 1115 (2003)).  On the other hand, where a plaintiff seeks damages on a dilution claim that was commenced prior to the enactment of the TDRA, the *actual* dilution requirement under the FTDA controls.  See Malletier v. Dooney & Bourke, Inc., 500 F.Supp.2d 276, 283, n.31 (S.D.N.Y. 2007) (citing Starbucks Corp., 477 F.3d at 766 (citing Havana Club Holding, S.A. v. Galleon S.A., 203 F.3d 116, 129 (2d Cir.2000)).  Here, Plaintiffs make clear that they seek summary judgment on all of their claims solely as to liability.  For their part, Defendants seek judgment in their favor dismissing all of Plaintiffs' claims.

49

According to the complaint in this action, Plaintiffs seek injunctive as well as monetary relief.  Therefore, Plaintiffs' dilution claim for injunctive relief may be analyzed under the "likely to cause dilution" standard of the TDRA, but the actual dilution standard under the FTDA may be applied to Plaintiffs' dilution claim insofar as they seek monetary damages.  See Malletier, 500 F.Supp.2d at 283 (finding that plaintiff "will [] not reap monetary remedies absent a showing of actual dilution.").

According to the TDRA, for a mark to be considered famous, it must be "widely recognized by the general consuming public of the United States as a source of the goods or services of the mark's owner." § 1125(c)(2)(A).  In order to decide whether a mark is famous, a court may consider all of the following factors:

> (i) The duration, extent, and geographic reach of advertising and publicity of the mark, whether advertised or publicized by the owner or third parties.
> (ii) The amount, volume, and geographic extent of sales of goods or services offered under the mark.
> (iii) The extent of actual recognition of the mark.
> (iv) Whether the mark was registered under the Act of March 3, 1881, or the Act of February 20, 1905, or on the principal register.

Id.  Regarding distinctiveness, a court may deem a mark to be inherently distinct where, as here, the mark is incontestable.  Savin Corp., 391 F.3d at 451 (noting that "Honda" or Acura" are "obviously distinctive").  Once a court determines that the "famous" element is satisfied, actual dilution may be presumed where the mark used is identical to the plaintiff's trademark.  Id. at 452-53 (finding that "where a plaintiff who owns a famous senior mark can show the commercial use of an identical junior mark, such a showing constitutes circumstantial evidence of the actual-dilution element of an FTDA claim.").  See also Dan-Foam A/S v. Brand

50

Named Beds, LLC, 500 F.Supp.2d 296, 308 (S.D.N.Y. 2007).

Plaintiffs here argue that their marks are famous, noting the length of time of their registration, their multi-million dollar international marketing campaign, and the large amount, volume and geographic extent of sales. See Audi, AG v. D'Amato, 469 F.3d 534, 543 (6th Cir. 2006) (finding Audi trademarks recognizable and widely known, thus famous). See also Scipione Decl. at ¶¶ 4-9, Dkt. No. 95-37. Plaintiffs have submitted evidence of their international advertising and sales of their products, as well as the length of time of the registration of the marks at issue, and Defendants have failed to identify a fact issue to challenge same. Accordingly, Plaintiffs have successfully established the famousness element of their dilution claim.

Regarding the actual dilution element, Plaintiffs argue that Defendants have used marks identical to their trademarks, and thus actual dilution is presumed. Savin Corp., 391 F.3d at 452-453. Without addressing the issue of similarity of the parties' marks, Defendants simply contend that Plaintiffs have failed to prove actual dilution because they have not proved any loss of sales in support of their dilution claim. Defendants also argue that Plaintiffs can not established the lesser-required likelihood of dilution because Defendants' use of Plaintiffs' marks constitutes fair use.

Of course, "[u]nder Moseley, the actual dilution requirement 'does not mean that the consequences of dilution, such as an actual loss of sales or profits, must also be proved.'" Dan-Foam A/S, 500 F.Supp.2d at 308 (quoting Mosley, 537 U.S. at 433, 123 S.Ct. 1115). The law clearly provides for a presumption of actual dilution where, as here, the marks used by Defendants are identical to Plaintiffs' marks. Therefore, the court finds as a matter of law that Plaintiffs have

established the actual dilution element of their trademark dilution claim, and Defendants' other arguments regarding dilution, actual or likely, need not be addressed.

The court's inquiry does not end here, however.  It is true that the third element of Plaintiffs' dilution claim, that Defendants' use began after Plaintiffs' marks became famous, is not disputed.  However, there are questions of fact regarding the use in commerce element of Plaintiffs' dilution claim as to some of Defendants' uses of Plaintiffs' marks.  For the reasons discussed regarding Plaintiffs' infringement claims, there are questions of fact as to whether any customer did, or could, view the signs/stickers, which included the AUDI RING LOGO® as well as the AUDI® mark.  Also as previously addressed, the evidence of record regarding Defendants' use of the email address, allaudi.shokan@verizon.net is limited to a copy of one message from that email address to Shokan's webmaster.  Finally, for the reasons previously discussed, there are questions of fact regarding whether anyone at Shokan answered the business telephone, "all Audi".  Accordingly, as to those uses, Plaintiff's motion for summary judgment on their dilution claim is denied.  Defendants' motion for summary judgment on Plaintiffs' dilution claim is granted, solely as to the use of the email address, allaudi.shokan@verizon.net, but is denied regarding the presence of signs/stickers, which included the AUDI RING LOGO® and the AUDI® mark, on Shokan's business premises, as well as the answering of Shokan's business telephone, "all Audi".

Regarding Defendants' use of the AUDI RING LOGO® on its website, while it is true that questions of fact remain regarding the issue of likelihood of confusion as to Plaintiffs' infringement claims, that is due to the issue of the

length of time the Logo appeared on the website.  It is undisputed that the Logo did appear on the website.  Also at issue is whether Defendants intended to place the Logo on their website.  Because a claim for injunctive relief on a trademark dilution claim under the Lanham Act does not require wilful intent, however, the question of Defendants' intent in placing the Logo on their website does not prevent summary judgment on Plaintiffs' dilution claim for injunctive relief, which is the only relief Plaintiffs seek on their pending motion.  Accordingly, Plaintiffs' motion for summary judgment is granted and Defendants' motion for summary judgment is denied solely as to the claim for injunctive relief on Plaintiffs' trademark dilution claim regarding the existence of the AUDI RING LOGO® on Defendants' website.

Finally, for the reasons previously discussed, there is no question that Defendants used the email signature block, "Shokan Audi Parts" on emails to customers.  Accordingly, as to Plaintiffs' trademark dilution claim regarding this usage, Plaintiffs' motion for summary judgment is granted and Defendants' motion for summary judgment is denied.

### *G.  Cyberpiracy*

Plaintiffs' remaining cause of action is a claim of cyberpiracy against Defendants pursuant to the Anticybersquatting Consumer Protection Act ("ACPA"), codified at 15 U.S.C. § 1125(d).  In order to prevail on such a claim, Plaintiffs must prove that (1) they own a distinctive or famous mark which is entitled to protection by the ACPA; (2) Defendants' domain name is identical or confusingly similar to Plaintiffs' mark; and (3) Defendants acted with a bad faith intent to profit from Plaintiffs' mark when they registered their domain name.  See 15 U.S.C. § 1125(d)(1)(A); Sporty's Farm LLC v. Sportsman's Mkt., Inc., 202

F.3d 489, 496-99 (2d Cir. 2000).

The success of this claim requires a finding of bad faith by Defendants in registering the www.800allaudi.com domain.  In light of this court's finding that the terms of the Settlement Agreement unambiguously granted Shokan permission to use the vanity telephone number, 1-800-All-AUDI, the court cannot find as a matter of law that the registration of a domain name with the contents of that vanity telephone number, which Shokan had a legal right to use, constitutes bad faith.  Again, considering that "[s]ubjective issues such as good faith are singularly inappropriate for determination on summary judgment," the court declines to grant either party relief on this issue at this stage of the litigation. Cadbury Beverages, Inc.,  73 F.3d at 483 (quoting American Int'l. Group, Inc. v. London Am. Int'l Corp., 664 F.2d 348, 353 (2d Cir.1981)).  Accordingly, regarding Plaintiffs' cyberpiracy claim, both Plaintiffs' and Defendants' motions for summary judgment are denied.

### H.  Claims Against Defendant John Smith

As an initial matter, Plaintiffs make clear that they assert personal liability against defendant Smith solely as to their infringement claims.  Accordingly, summary judgment is granted to Smith on all of Plaintiffs' remaining claims.

Plaintiffs argue that personal liability in trademark infringement cases is distinct from, and independent of, liability based on the theory of piercing the corporate veil.  "While a corporate officer is not necessarily individually liable for torts committed on behalf of the corporation, personal liability for trademark infringement . . . is established if the officer is a moving, active, conscious force behind [defendant corporation's] infringement."  Cartier, Inc. v. Four Star Jewelry Creations, Inc., 01-cv-11295, 2004 WL 169746, at *2 (S.D.N.Y. Jan. 28, 2004)

(quoting Bambu Sales, Inc., v. Sultana Crackers, Inc., 683 F.Supp. 899, 913-14 (E.D.N.Y.1988)). Defendants argue that Smith is entitled to summary judgment on Plaintiffs' infringement claims because there is no evidence that he was a "moving, active conscious force" behind any of the alleged acts of infringement.

Plaintiffs argue that there is undisputed evidence of Smith's active participation in several incidents of infringement, as follows: (1) Smith's approval of the AUDI RING LOGO® on Shokan's website; (2) his registration of the domain name, 800allaudi.com, (3) his use of the email address allaudi.shokan@verizon.net as well as the signature block, "Shokan Audi Parts" on emails to customers, and (4) his answering the telephone, "all Audi".

Questions of fact remain, however, regarding Smith's involvement in some of Plaintiffs' enumerated incidents of infringement. First, regarding Smith's approval of the AUDI RING LOGO® on Shokan's website, as previously discussed, Defendants' web designer testified that he received approval from either Smith or his son, Aaron, before the website, which included the Logo, went live in 2001. Regarding answering the telephone, "all Audi", while Smith declared that he cannot remember a single instance when he answered Shokan's telephone in that manner, at his deposition he testified that he may have done so. As to registration of the domain name, 800allaudi.com, Smith's name is listed, along with Shokan, as both the registrant and the administrative contact. Finally, questions of fact remain regarding whether Smith personally sent email messages with the signature block, "Shokan Audi Parts." However, regarding use of the email address allaudi.shokan@verizon.net, as previously discussed, there is no evidence of record that said address was used to contact anyone but Shokan's webmaster. Accordingly, Smith's motion for summary judgment is granted

55

regarding Plaintiffs' infringement claims insofar as they relate to the use of the email address allaudi.shokan@verizon.net, but is denied as to the placing of the AUDI RING LOGO® on Shokan's website, answering the telephone, "all Audi", use of the signature block, "Shokan Audi Parts", and registration of the domain name, 800allaudi.com.

## *V.  Conclusion*

In accordance with the foregoing discussion of the pending motions for summary judgment, it is hereby

ORDERED that the motion for summary judgment by plaintiffs and counter-defendants, Audi AG and Volkswagen of America, Inc. ("Plaintiffs"), see Dkt. No. 95, is DENIED in part and GRANTED in part; and it is further

ORDERED that the motion for summary judgment by defendants and counter-plaintiffs, Shokan Coachworks, Inc. and John H. Smith ("Defendants"), see Dkt. No. 96, is DENIED in part and GRANTED in part.


IT IS SO ORDERED.


DATED:      November12, 2008
            Syracuse, New York


_____
Neal P. McCurn
Senior  U.S. District Judge